## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JASON GREENBERG, | ) | |
| | ) | |
| Plaintiff, | ) | 2:24-CV-517 |
| | ) | |
| v. | ) | |
| | ) | |
| D. NEIL MCEWEN, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM ORDER

Plaintiff Jason Greenberg, proceeding *pro se*, brings 18 federal and state-law claims, in connection with his arrest on August 24, 2023, against the following 10 Defendants: Mercer County Judges D. Neil McEwen and Ronald D. Amrhein Jr.; Bruce Rosa and David Moyer of the Mercer County Sheriff's Department; Mercer County Domestic Relations employees Leila Joseph and Stephanie Balsamo; Mercer County Detective Thomas Mack; Mercer County; Sandy Lake Police Chief Mark Jaskowak; and Stoneboro Police Chief Charles Turick. All Defendants have moved to dismiss the complaint. ECF 16 (Judges McEwen and Amrhein); ECF 24 (Chief Jaskowak); ECF 32 (Officer Turick); ECF 34 (Mercer County Defendants).

After careful review, and construing Mr. Greenberg's *pro se* complaint liberally, as required, the Court finds that dismissal is appropriate because the complaint fails to plead sufficient allegations to state plausible claims for relief under federal law as to any of the Defendants. The Court also declines to exercise supplemental jurisdiction over the state-law claims. That said, the Court will also grant Mr. Greenberg leave to file an amended complaint.

According to the police incident report (attached to the complaint as an exhibit, ECF 1-1, p. 31), Mr. Greenberg was arrested on August 24, 2023 pursuant to a warrant issued three days earlier by Judge McEwen for failing to comply with a prior

- 1 -

court order.[1]  That day, Detective Mack and other officers attempted to execute the
arrest warrant by initiating a traffic stop on Mr. Greenberg after he dropped off his
children at school.  *Id.*, p. 32; ECF 1, ¶ 102.  The officers had set up a perimeter
around the school, and were aware that Mr. Greenberg's 17-year-old daughter was in
the car with him when they initiated the stop.  ECF 1-1, p. 32; ECF 1, ¶¶ 108-10.
However, Mr. Greenberg didn't pull over, and continued to drive for about 1.1 miles.
ECF 1-1, p. 32.  The officers then attempted to use a rolling roadblock to box Mr.
Greenberg in, but he eluded those efforts, and continued to turn into the driveway of
his home.  *Id.*  As Mr. Greenberg pulled into his driveway, according to the police
report, the officers used a "pursuit intervention maneuver" (known as a "PIT"
maneuver) that involved striking the rear of Mr. Greenberg's car with the front end
of a Sheriff's vehicle, at a "slow speed, estimated to be 15 mph."  *Id.*  The first time
this technique was used, Mr. Greenberg "steer[ed]" out of it, and continued down his

---

[1] In deciding a motion to dismiss, the Court may properly consider the exhibits
attached to the complaint, matters of public record, and "an undisputedly authentic
document that a defendant attaches as an exhibit to a motion to dismiss if the
plaintiff's claims are based on the document."  *Pension Ben. Guar. Corp. v. White
Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).  The Court thus may properly
consider the police incident report, which is attached to the complaint, and the arrest
warrant, which is attached to the Mercer County Defendants' motion (ECF 34-1, p.
2), is referenced in the complaint, and forms the basis of Mr. Greenberg's claims.

The Court is mindful that the police incident report can only be considered to the
extent that it isn't inconsistent with the allegations in the complaint.  *Kwanzaa v.
Tell*, No. 21-1939, 2022 WL 16756334, at *3 (3d Cir. Nov. 8, 2022).  Therefore, to the
extent that the facts in the police report cannot be reconciled with the facts alleged
in the complaint, the facts in the complaint prevail.  That said, the police report's
description of how the arrest was carried out on August 24, 2023 is consistent with
(and tends to supplement) the allegations in the complaint.  Mr. Greenberg claims
that there are "false statements made by Defendants Mack, Moyer, Turick and
Jaskowak in the police report[,]" but does not specify which facts in the police report
he is disputing.  ECF 1, ¶ 133.  He does, however, dispute the truthfulness of the
information that was conveyed to the officers prior to the arrest (*i.e.*, that he was a
sovereign citizen and had heavy military equipment at home).  *Id.* at ¶¶ 156-164.

driveway, but the second time the technique was used, Mr. Greenberg's car spun 180 degrees and came to a stop. *Id.* Mr. Greenberg alleges that the officers stopped his vehicle in his driveway "by ramming into it and spinning the vehicle around using Sheriff cars." ECF 1, ¶ 75. Mr. Greenberg "promptly and peacefully" exited his car, while the officers had their guns drawn and pointed at him and his daughter. *Id.* at ¶¶ 104-06. There was also a K-9 unit on scene that was "frantically barking and trying to attack Mr. Greenberg and his daughter." *Id.* Mr. Greenberg was placed in handcuffs and put into the back of a sheriff's car, where he was shown a warrant through the plexiglass window, and then taken to the Mercer County Jail. *Id.* at ¶¶ 76-80. He was charged with Fleeing or Attempting to Elude Officer; Flight to Avoid Apprehension; and Endangering Welfare of Child. A charge for Disorderly Conduct was added by information on August 19, 2024. On September 24, 2024, he was sentenced to one year of probation for Disorderly Conduct, for which he entered a nolo contendere plea. *See* Mercer County Court of Common Pleas Docket CP-43-CR-0001211-2023.

Based on these allegations, Mr. Greenberg filed the present suit against a number of government officials involved in the court proceedings and arrest. Defendants have filed motions to dismiss, which have been fully briefed and so are ready for disposition.

As explained below, all of Mr. Greenberg's federal claims are insufficiently pled.[2]

---

[2] While the Mercer County Defendants and Officer Turick argue that *Younger* abstention bars all the claims, this doctrine doesn't apply because, according to current public records, the state-court case has been adjudicated and there is a final judgment. *See* Mercer County Court of Common Pleas Docket CP-43-CR-0001211-2023; *Hernandez v. Masinick*, No. 22-00198, 2023 WL 1475103, at *4 (M.D. Pa. Feb. 2, 2023) ("[I]n the absence of an ongoing state judicial proceeding, abstention is not warranted." (cleaned up)).

**Count 1 – False Arrest**.  Mr. Greenberg's claim for false arrest under Section 1983 fails because he doesn't allege facts "establishing that he was arrested without probable cause." *Kennedy v. City of Philadelphia Police Dep't*, No. 23-2401, 2023 WL 5044968, at *3 (E.D. Pa. Aug. 7, 2023).  The officers were carrying out an arrest pursuant to a bench warrant for failing to comply with a prior court order, and although Mr. Greenberg alleges in a conclusory manner that the officers made false statements in the police report (ECF 1, ¶ 133), there aren't allegations that the officers "knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood *in applying for a warrant*; and

---

Separately, the claims against Judges McEwen and Amrhein are barred by judicial immunity, which applies "so long as the suit challenges a judicial act that was not taken in the clear absence of all jurisdiction." *Malhan v. Katz*, 830 F. App'x 369, 371 (3d Cir. 2020) (cleaned up).  "An act is judicial if (1) it is a function normally performed by a judge; and (2) the parties dealt with the judge in his judicial capacity." *Id.* (cleaned up).  And generally, "where a court has some subject matter jurisdiction, there is sufficient jurisdiction for immunity purposes." *Figueroa v. Blackburn*, 208 F.3d 435, 443-44 (3d Cir. 2000) (cleaned up).  It appears that Judge McEwen signed the warrant for Mr. Greenberg's arrest, and Judge Amrhein may have held contempt hearings (for child support payments that Mr. Greenberg claims he doesn't owe). ECF 1, ¶¶ 166-170.  State court dockets suggest that the judges presided over the criminal proceedings arising out of Mr. Greenberg's arrest.  *See* ECF 16.  Mr. Greenberg alleges that both Defendants conspired with others to falsely arrest and use excessive force against him, falsely accusing and targeting him for being a sovereign citizen, legally owning firearms and "demilitarized military equipment used for movie rentals," and because his ex-wife filed a Protection from Abuse against him that contained "false claims that were never proven."  ECF 1, ¶¶ 155-56.  He alleges elsewhere that all Defendants "conspired together to impede the due course of justice" and initiated and pursued legal proceedings "with an ulterior motive or purpose unrelated to the proper use of the legal process."  *Id.* at ¶¶ 176, 215.  Even assuming the truth of these allegations, Mr. Greenberg dealt with Judges McEwen and Amrhein in their judicial capacity, *e.g.*, issuing an arrest warrant, holding contempt hearings, and presiding over criminal proceedings, all of which fall within their jurisdiction, and "a judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority." *Malhan*, 830 F. App'x at 371 (cleaned up).

that such statements or omissions are material, or necessary, to the finding of probable cause." *Wilson v. Russo*, 212 F.3d 781, 786-87 (3d Cir.2000) (cleaned up) (emphasis added).

To the extent that Mr. Greenberg's false-arrest claim is premised on his assertion that he should not have been held in contempt for child-support payments that he did not owe (ECF 1, ¶¶ 134, 160, 168-170), and assuming that the contempt order arises out of a final judgment from child support proceedings that have ended, this argument would be barred by the *Rooker-Feldman* doctrine because the warrant directly resulted from the state court's contempt order; thus, his false-arrest claim would be "inextricably intertwined with the state court proceedings" because he "could not be afforded relief by this Court without reviewing the basis for the state court determination and then invalidating the state court order itself." *Nellom v. Delaware Cnty. Domestic Rels. Section*, 145 F. Supp. 3d 470, 484 (E.D. Pa. 2015); *see also Frederick of Fam. Gonora v. Risch*, No. 23-893, 2023 WL 8271932, at *5 n.12 (D.N.J. Nov. 30, 2023); *Parness v. Christie,* 751 F. App'x 277, 281 (3d Cir. 2018) (claims arising out of plaintiff's arrest for civil contempt for not paying child support barred by *Rooker-Feldman* because the claims "essentially sought the undoing of the state court judgments against him").[3]

---

[3] *Rooker-Feldman* applies when four requirements are met: "the federal plaintiff must have lost in state court; (2) the plaintiff must be complaining of injuries caused by the state-court judgments; (3) the complained of state-court judgments must have been rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state-court judgments." *Tarapchak v. Schuylkill Cnty.*, No. 13-1895, 2014 WL 4626701, at *12 (M.D. Pa. Sept. 15, 2014) (cleaned up). Mr. Greenberg is complaining of injuries caused by a state-court order (the July 12, 2023, court order), but to the extent that he is "challenging final judgments in child support proceedings that have ended[,]" this Court cannot review and reject that order for purposes of the false-arrest claim. *Frederick of Fam. Gonora*, 2023 WL 8271932, at *5 n.12; *see Kastler of the Fam. Joseph v. Washington Cnty. Domestic Rels. Unit,* No. 19-00781, 2020 WL 429124, at *4 (W.D. Pa. Jan. 28, 2020) (Hornak, C.J.) (applying *Rooker-Feldman* for injuries derived from state court determination that plaintiff

If Mr. Greenberg's false-arrest claim is premised on the charges arising out of the August 24, 2023, arrest, there aren't any allegations to support an inference that the officers arrested him without probable cause.[4]  To the contrary, the police report details Mr. Greenberg's effort to evade arrest several times throughout the encounter, despite the officers' use of audible and visual signals: failing to pull over when officers initiated a traffic stop, eluding officers when they used a rolling roadblock, and steering out of the PIT maneuver the first time it was used.  ECF 1-1, p. 32.  Mr. Greenberg hasn't disputed this aspect of the police report, and so, under these facts, the Court cannot find that officers acted without probable cause in charging him with fleeing and eluding or flight to avoid apprehension.[5]

**Count 3 – Excessive Force.**  The crux of Mr. Greenberg's Section 1983 excessive-force claim is that the officers rammed sheriff vehicles into his car, pointed their firearms at him and his minor daughter, and released a police dog at them.  ECF 1, ¶¶ 103-06.  But these allegations do not plausibly establish that the officers' use of

---

must make support payments); *Mikhail v. Kahn*, 991 F. Supp. 2d 596, 616 (E.D. Pa. 2014) (*Rooker-Feldman* applies to injuries caused by Protection From Abuse orders).

[4] "Probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 788 (3d Cir. 2000) (citation omitted).  A false arrest claim will "necessarily fail if probable cause existed for any one of the crimes charged against the arrestee." *Harvard v. Cesnalis*, 973 F.3d 190, 199 (3d Cir. 2020) (quotation omitted).

[5] The false-arrest claim would also be barred under *Heck v. Humphrey*, 512 U.S. 477 (1994), even though Mr. Greenberg was ultimately convicted of a different crime (disorderly conduct) than the ones that he was initially charged with, because "[w]hen making an arrest, probable cause need only exist as to any offense that could be charged under the circumstances." *Eldridge v. Diehl*, No. 10-3537, 2011 WL 4467779, at *2 (E.D. Pa. Sept. 23, 2011).  A judgment in Mr. Greenberg's favor on his false-arrest claim would "necessarily imply the invalidity of the disorderly conduct conviction, a conviction that has not been reversed on appeal, expunged, declared invalid, or called into question." *Lynn v. Desiderio*, 159 F. App'x 382, 384 (3d Cir. 2005).

force against Mr. Greenberg was unreasonable under the circumstances, especially when considered in context of other (undisputed) facts in the police report.[6]

Before carrying out the arrest, Detective Mack had received information that Mr. Greenberg "was very defiant and a sovereign citizen and had heavy equipment at his house including tanks and some heavy firepower"; "this was not a case [Detective Mack] should handle alone"; Mr. Greenberg recently had a Protection from Abuse filed against him; 60-63 guns were seized from him, including fully automatic weapons; Mr. Greenberg was described as a "stand your ground kind of guy who puts a chain across his driveway" and who had 4 Mastiff dogs (3 of which were thought to bite) and a concealed carry permit. ECF 1-1, p. 31.

While Mr. Greenberg disputes the veracity of the information that Detective Mack learned about him (*e.g.*, claiming that he was falsely accused of being a sovereign citizen and of having heavy military equipment at his home, ECF 1, ¶¶ 156-164), he hasn't disputed that the officers, in fact, had received this information before they carried out his arrest. Therefore, even if the officers received incorrect information, they were still justified to think that Mr. Greenberg was potentially violent or dangerous, and may be armed.

---

[6] The standard in an excessive-force claim is "whether the police officer's actions were objectively reasonable in light of the facts and circumstances[.]" *El v. City of Pittsburgh*, 975 F.3d 327, 336 (3d Cir. 2020) (cleaned up). "Courts in the Third Circuit consider several factors, including (1) the severity of the crime at issue; (2) whether the suspects pose an immediate threat to the safety of the officers or others; (3) whether they are actively resisting arrest or attempting to evade arrest by flight; (4) the physical injury to the plaintiff; (5) the possibility that the persons subject to the police action are themselves violent or dangerous; (6) the duration of the action; (7) whether the action takes place in the context of effecting an arrest; (8) the possibility that the suspect may be armed; and (9) the number of persons with whom the police officers must contend at one time." *Dumas v. Almusawi*, No. 23-51, 2024 WL 3414243 (W.D. Pa. July 15, 2024) (Ranjan, J.).

Moreover, as discussed above, Mr. Greenberg was resisting arrest, and the officers' use of the PIT maneuver to stop his car and drawing guns on him as he got out of his car was in the context of effecting his arrest, after he had resisted arrest multiple times by attempting to drive away and ignoring officers' commands. *See Jackson v. Brooklyn Ctr.*, No. 21-2072, 2023 WL 2368032, at *7 (D. Minn. Mar. 6, 2023) (failing to follow officers' instructions can constitute passive resistance to arrest).

In similar situations, the PIT maneuver has been found to be an acceptable use of force, and Mr. Greenberg "has failed to allege any facts that would allow this Court to infer that [the officers'] use of a PIT maneuver to stop the vehicle was objectively unreasonable." *Hammock v. Huffstickler*, No. 11-242, 2011 WL 3687611, at *2 (W.D.N.C. Aug. 23, 2011) (allegation that officer performed PIT maneuver at unsafe speed insufficient); *see also Moore-Jones v. Quick*, 909 F.3d 983, 986 (8th Cir. 2018) (collecting cases where PIT maneuvers were reasonably used); *Bland v. City of Newark*, 900 F.3d 77, 84 (3d Cir. 2018) (noting PIT maneuver is "standard"); *Hardin v. City of Birmingham*, No. 21-01002, 2022 WL 2820100, at *5 (N.D. Ala. July 19, 2022) (not unreasonable for officer to cause non-fatal, non-severe collision to end 20-minute car chase when officer had reason to belief suspect's flight was placing officers and bystanders in danger) (appeal filed); *Johns v. City of Florissant*, No. 18-1121, 2020 WL 7695416, at *6 (E.D. Mo. Dec. 28, 2020) (PIT maneuver not unreasonable where used to prevent suspect from fleeing a traffic stop).

Neither is there sufficient factual support in the complaint to infer that the officers used excessive force against Mr. Greenberg by arresting him at gunpoint.[7]

---

[7] Mr. Greenberg also alleges that the officers pointed their firearms at his daughter as she exited the vehicle (ECF 1, ¶¶ 106-107, 114), but his daughter is not a plaintiff to this suit, and so Mr. Greenberg can't assert her constitutional rights. *Brookins v. City of Philadelphia*, No. 24-470, 2024 WL 4535457 (E.D. Pa. Oct. 21, 2024) (the

*See Stiegel v. Peters Twp.*, 600 F. App'x 60, 65 (3d Cir. 2014) (discussing "(1) cases where an officer was justified in displaying his weapon because he reasonably perceived that he was in danger, and (2) cases where the display was not warranted because there was no threat to officer safety"). While Mr. Greenberg alleges that he fully complied with officers by "promptly and peacefully" exiting the car after the officers used the PIT maneuver (ECF 1, ¶¶ 104-06), Mr. Greenberg's non-compliance leading up to that point—combined with the information the officers received that gave them reason to believe Mr. Greenberg may pose a threat to the officers' safety—doesn't lead to an inference that arresting him at gunpoint was objectively unreasonable. The officers were "entitled to brandish their weapons when the

---

general rule is that "a litigant may only assert his own constitutional rights or immunities" and "one cannot sue for the deprivation of another's civil rights" (cleaned up)). Moreover, the Court notes that, if Mr. Greenberg seeks relief on behalf of his minor, he is appearing *pro se* and therefore "is not permitted to represent other parties, including his minor child." *Thompson v. Hens-Greco*, No. 16-1100, 2016 WL 7046959, at *4 (W.D. Pa. Nov. 8, 2016) (Lenihan, M.J.). If he seeks to add his daughter as a plaintiff, she would need an attorney to represent her. *Id.*; *Parker v. Baker*, No. 19-1439, 2019 WL 6310754, at *1 n.1 (W.D. Pa. Nov. 25, 2019) (Ranjan, J.).

While courts have found excessive force when officers hold unarmed minor children at gunpoint under certain circumstances, *see Stiegel v. Peters Twp.*, 600 F. App'x 60, 65-66 (3d Cir. 2014) (collecting cases), the Court notes that the complaint is lacking in detail as to whether officers were unreasonable to draw their guns on Mr. Greenberg's daughter, *i.e.*, how long did the officers point their guns at her; did they continue to hold her at gunpoint "even after they had gained complete control of the scene"; did she attempt to evade the officers or pose any other threat? *Est. of Israel by & through Russell v. City & Cnty. of Denver*, 643 F. Supp. 3d 1221, 1238 (D. Colo. 2022); *see also Hemry v. Ross*, 62 F.4th 1248, 1258 (10th Cir. 2023) (granting qualified immunity to rangers who "reasonably suspected they were approaching the subject of a manhunt and his unidentified passenger" because, even though rangers lack information about the passenger's potential dangerousness, they could reasonably fear she would act in suspect's interest and could have access to any weapons the suspect might have possessed). Because Mr. Greenberg's daughter is not a plaintiff, the Court does not reach this issue.

circumstances make it appropriate for them to do so[,]" and Mr. Greenberg "neither alleges that [any of the officers] fired his weapon, nor that [they] trained that weapon on [Mr. Greenberg] any longer than was necessary to effect the arrest[,]" or that the officers "used any physical force on [him], beyond what was necessary to complete his arrest." *Durham v. City of Philadelphia*, No. 17-5152, 2019 WL 3202506, at *12 (E.D. Pa. July 16, 2019) (objectively reasonable for officer to brandish and threaten to use his weapon when confronting suspect after a PIT collision, where there were multiple warrants against suspect, who fled from police in his car, causing a hot pursuit); *see also Mellott v. Heemer,* 161 F.3d 117, 123 (3d Cir. 1998) (objectively reasonable for marshals, "in an effort to discourage resistance and ensure their own safety[,]" to load and point their weapons at plaintiff who had threatened to shoot federal agents who came on the property, was reported to own numerous firearms, and had chased an FHA agent off his property with a pick-up truck).

In short, there isn't enough alleged in the complaint to plausibly plead the use of excessive force.[8]

**Remaining federal claims**.    Mr. Greenberg insufficiently pleads his remaining federal claims.

The Section 1983 substantive-due-process claim (Count 20), alleging that Defendants "create[ed] a special relationship with Plaintiff and expos[ed] him to a

---

[8] Mr. Greenberg also alleged that a police dog was released, "frantically barking and trying to attack" him and his daughter.  ECF 1, ¶ 105.  However, this assertion, by itself, is insufficient for the Court to determine whether the use of the police dog could be considered excessive under the circumstances, and Mr. Greenberg has not alleged whether the police dog made contact with him or harmed him in any way.  *See Gaines v. Gloucester City Police Dep't*, No. 08-3879, 2010 WL 760511, at *5 (D.N.J. Mar. 3, 2010) ("[T]he mere presence of a police dog, while intimidating, does not amount to excessive force."); *Davis v. Egg Harbor Twp.*, No. 14-4213, 2017 WL 2423053, at *8, n. 9 (D.N.J. June 5, 2017) ("Courts have been reticent to find the application of canine force for intimidation purposes to be unreasonable." (collecting cases)).

state-created danger" through their "manipulation of legal proceedings and abuse of authority," (ECF 1, ¶¶ 192-193), fails because Mr. Greenberg's allegations are conclusory.[9]

The abuse-of-process claim (Count 12), which the Court presumes is brought under both Section 1983 and state law, alleges that Defendants "initiat[ed] and pursu[ed] legal proceedings with an ulterior motive or purpose unrelated to the proper use of the legal process." ECF 1, ¶ 176. The factual allegations do not support this claim.

"An abuse of process occurs when a party employs legal process against another primarily to accomplish a purpose for which it was not designed." *Napier v. City of New Castle*, 407 F. App'x 578, 582 (3d Cir. 2010). "There is no action for abuse of process when the process is used for the purpose for which it is intended, but there

---

[9] The "state-created danger" claim is an "exception to the general rule that the Due Process Clause imposes no duty on states to protect their citizens from private harm." *L.R. v. Sch. Dist. of Philadelphia,* 836 F.3d 235, 242 (3d Cir. 2016). It requires a plaintiff to plead four elements: (1) "the harm ultimately caused was foreseeable and fairly direct;" (2) "a state actor acted with a degree of culpability that shocks the conscience;" (3) "a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and" (4) "a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all." *Id.* Mr. Greenberg hasn't sufficiently pled these elements, and although he refers to "manipulation of legal proceedings and abuse of authority," the Court cannot tell what specific acts any of the Defendants affirmatively did that resulted in a foreseeable danger to his safety. To the extent that this state-created-danger claim is covered by a specific constitutional provision—such as the Fourth Amendment, for his false arrest and excessive force claims—the state-created danger theory may not fit into the facts of this case. *See Batch v. Lauricia*, No. 19-01046, 2021 WL 4086130 (W.D. Pa. Aug. 16, 2021) (Eddy, C.M.J.) ("Under the 'explicit source rule,' if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." (cleaned up)).

is an incidental motive of spite or an ulterior purpose of benefit to the defendant." *Id.* (cleaned up). The complaint doesn't specifically identify what "process" was used, and it contains no facts that Defendants abused the legal process after the bench warrant was issued or after the officers effected the arrest. *Nabelsi v. Holmdel Twp.*, No. 20-20702, 2021 WL 5578851, at *10 (D.N.J. Nov. 30, 2021).

Even though Mr. Greenberg alleges that "[h]e has been harassed by the Child Support Agency and scheduled for numerous contempt hearings based on false money owed" (ECF 1, ¶ 167) and that contempt hearings were scheduled even though his "payments were up to date" (*id.* at ¶ 168), these allegations only indicate that the state-court proceedings were being used for their intended purposes, *e.g.*, adjudicating whether he should be held in contempt for not paying child support.[10] *See Dunne v. Twp. of Springfield*, 500 F. App'x 136 (3d Cir. 2012) (abuse-of-process claim fails where the "sole aim of the proceedings in the state courts was to determine whether [plaintiff] was guilty of the offenses in question, which is precisely the purpose intended by the law." (cleaned up)); *Addlespurger v. Corbett*, No. 9-1064, 2011 WL 3418975, at *10 (W.D. Pa. Aug. 1, 2011) (Cercone, J.) ("Plaintiff can show nothing more than the proposition that [the judge] implemented orders with the intent of carrying out the domestic support laws of Pennsylvania and entered orders in

---

[10] Additionally, the complaint is unclear as to how Mercer County Domestic Relations employees Leila Joseph and Stephanie Balsamo were involved in Mr. Greenberg's arrest, but to the extent that their involvement consisted of acts that are discretionary and judicial in nature, *i.e.*, initiating and prosecuting child support proceedings or filing petitions to enforce a child support order, they would be entitled to quasi-judicial community for such acts. *Nellom v. Delaware Cnty. Domestic Rels. Section*, 145 F. Supp. 3d 470, 485 (E.D. Pa. 2015); *Severubi v. Boro.Sayreville*, No. 10-5707, 2011 WL 1599630, at *8 (D.N.J. Apr. 27, 2011); *Burrell v. Loungo*, 750 F. App'x 149, 156 (3d Cir. 2018) (any claims against members of the Lackawanna County Domestic Relations Office "for their actions in charging and prosecuting [plaintiff] for his failure to pay child support do not survive screening because these Defendants are entitled to quasi-judicial immunity for such actions").

furtherance of the orderly administration of justice. The other defendants merely carried out [the judge's] orders.").

The defamation claims (Counts 8 and 23), which the Court presumes are brought under both Section 1983 and state law, contain allegations that Domestic Relations employees made false and defamatory statements: falsely stating that he should be held in contempt for child support payments he claims were not owed (ECF 1, ¶ 134); making false statements to Detective Mack about him being a sovereign citizen and having heavy equipment at his house (*id*. at ¶¶ 156, 163); and falsely telling Detective Mack that Mr. Greenberg told a Domestic Relations employee "you do what you have to do, and I will do what I have to do" when this employee called Mr. Greenberg and asked why he didn't report to jail for child support payments that were due (*id*. at ¶¶ 160-61).

To begin with, the statement regarding Mr. Greenberg being held in contempt of court (presumably made following any orders issued holding him in contempt) is not actionable because it is barred by the *Rooker-Feldman* doctrine. *See Kastler of the Fam. Joseph*, 2020 WL 429124, at *4; *Van Tassel v. Piccione*, No. 13-1672, 2014 WL 1884212, at *5 (W.D. Pa. May 12, 2014) (Fischer, J.).

Further, the claims fail because, "[t]o make out a due process claim for deprivation of a liberty interest in reputation, a plaintiff must show a stigma to his reputation plus deprivation of some additional right [or] interest." *Kreischer v. Christine*, No. 21-221, 2021 WL 5140048, at *2 (M.D. Pa. Nov. 4, 2021) (setting forth the "stigma-plus" test). "To satisfy the 'stigma' part of the 'stigma-plus' test, a plaintiff must allege that the purportedly stigmatizing statements (a) were made publicly and (b) were false." *Arneault v. O'Toole*, 864 F. Supp. 2d 361 (W.D. Pa. 2012) (McLaughlin, J.). As to the "plus" part of the test: "A defamation suit under 42 U.S.C. § 1983 may proceed only if the defamatory act occurs in the course of or is accompanied by a change or extinguishment of a right or status guaranteed by state

law or the Constitution." *Ali v. Woodbridge Twp. Sch. Dist.*, 957 F.3d 174, 183-84 (3d Cir. 2020) (cleaned up); *see also Hester v. Allentown Police Dep't*, No. 13-4249, 2013 WL 4482453, at *3 (E.D. Pa. Aug. 21, 2013) ("Outside the public employment context, this standard generally requires an allegation that the defamation was coupled with an alteration in legal status." (cleaned up)).

The complaint doesn't meet this standard. That is, the complaint doesn't sufficiently allege that the statements were publicly made; instead, it appears that the statements by the Domestic Relations employees were made during a private conversation with Detective Mack. *See Razzano v. Sarandrea*, 431 F. Supp. 3d 650, 661 (W.D. Pa. 2019) (Horan, J.) ("[W]here the false statements are not publicly made, a due process claim fails to satisfy the stigma prong."); *Jacobs v. Cnty. of Bucks*, No. 22-2327, 2023 WL 4418217, at *5 (3d Cir. July 10, 2023) (in the public employment context, "[p]ublic disclosure means publication to the general public and does not include dissemination to entities related to the employer" (cleaned up)).

And even assuming the statements made by the Domestic Relations employees to Detective Mack harmed his reputation, Mr. Greenberg hasn't identified the constitutionally protected harm caused by these statements.[11] *See Cooley v. Barber*, No. 07-3327, 2007 WL 2900550, at *2 (3d Cir. Oct. 4, 2007) (loss of private employment insufficient to establish deprivation of constitutionally protected interest).

---

[11] However, if Mr. Greenberg had sufficiently alleged a Fourth Amendment excessive-force claim based on the officers' conduct leading up to his arrest on August 24, 2023, this could potentially qualify as a "plus," because the statements about Mr. Greenberg that were made to Detective Mack may have influenced the manner in which the officers carried out the arrest. *See Ford v. City of Harrisburg*, No. 17-908, 2019 WL 4412727, at *5 (M.D. Pa. Sept. 16, 2019) (dismissing Section 1983 defamation claim when plaintiff failed to allege a constitutional violation by way of a First Amendment retaliation claim).

Mr. Greenberg's *Monell* claim (against Mercer County, Stoneboro Borough, and Sandy Lake Borough[12]) fails because (1) the complaint doesn't adequately allege an underlying constitutional violation, (2) the allegations that the officers acted in accordance with a "policy or custom" of the municipal entities are conclusory, and no policy or custom is identified, and (3) and the allegations that the municipal entities have maintained "a policy of providing inadequate training" for "police officers responding to active warrants to be served" (*e.g.*, a "failure to train" claim) are conclusory and do not plead deliberate indifference by the municipalities, through a pattern of constitutional violations or otherwise.  ECF 1, ¶¶ 139-145; *Durham*, 2019 WL 3202506, at *14-15.[13]

---

[12] The *Monell* claims against Stoneboro Borough and Sandy Lake Borough also fail because they are not named as parties in this suit.

[13] A *Monell* claim may proceed either by pleading that "an unconstitutional policy or custom of the municipality led to his or her injuries, or that they were caused by a failure or inadequacy by the municipality that reflects a deliberate or conscious choice," including a failure to train, supervise, or discipline its officers.  *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019) (cleaned up).  "A plaintiff sufficiently pleads deliberate indifference by showing that (1) municipal policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights."  *Est. of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (cleaned up).  "Ordinarily, a pattern of similar constitutional violations by untrained employees is necessary to demonstrate deliberate indifference for purposes of failure to train[,]" but "in certain situations, the need for training can be said to be 'so obvious,' that failure to do so could properly be characterized as 'deliberate indifference' to constitutional rights even without a pattern of constitutional violations."  *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 223 (3d Cir. 2014) (cleaned up).  "Liability in single-incident cases depends on the likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights."  *Id.* at 223-24 (cleaned up).  While "a plaintiff could theoretically succeed on a claim that a municipality demonstrated deliberate indifference by failing to train officers on making arrests, including under circumstances where the plaintiff resists arrest or attempts to flee the scene[,]" Mr. Greenberg's failure-to-train claim can't succeed where there is no underlying constitutional violation.  *Durham*, 2019 WL 3202506,

The supervisory-liability claim (Count 10), alleging that Sheriff Rosa supervised Deputy Moyer and Sheriff Rosa's "deliberate indifference and negligent failure to provide adequate training to and supervision of [his] employees" caused a violation of his constitutional rights (ECF 1, ¶148-149), fails because there is no underlying constitutional violation and insufficient factual allegations showing that Sheriff Rosa "knew of any unreasonable risk [of constitutional injury] and was indifferent to that risk by failing to implement such a policy." *Bair v. SCI-Rockview*, No. 23-1860, 2024 WL 643292, at *3 (M.D. Pa. Feb. 15, 2024).[14]

The Section 1983 and Section 1985 conspiracy claims (Counts 11, 13, and 24), alleging that Defendants "acted in concert to conspire to falsely arrest and use excessive force" against him (ECF 1, ¶ 155), "engage[d] in concerted action aimed at depriving" him of his rights as a "member of a protected class" through "manipulation

---

at *15; *see also Wetzel v. Dietterick*, No. 21-01004, 2022 WL 4387877, at *3 (M.D. Pa. Sept. 22, 2022) ("Ultimately, when asserting a single-incident *Monell* claim, it is incumbent upon the plaintiff to assert well-pleaded facts which permit a finding of deliberate indifference grounded upon a risk of injury that must be a highly predictable consequence of the municipality's failure to train and supervise its employees." (cleaned up)).

[14] There are two theories of supervisory liability: "one under which supervisors can be liable if they established and maintained a policy, practice or custom which directly caused the constitutional harm, and another under which they can be liable if they participated in violating plaintiff's rights, directed others to violate them, or, as the persons in charge, had knowledge of and acquiesced in their subordinates' violations." *Bair*, 2024 WL 643292, at *3 (cleaned up). For the first theory, which is implicated by Sheriff Rosa's alleged failure to train and supervise, "the plaintiff must establish that: (1) existing policy or practice creates an unreasonable risk of constitutional injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy or practice." *Id.* (citation omitted); *see Grieco v. Lanigan*, No. 15-7881, 2016 WL 3450808, at *6 (D.N.J. June 17, 2016) (dismissing supervisory liability claim based on failure to train and supervise, where complaint didn't identify any alleged flaws in the training or supervision, or any facts suggesting defendants were on notice of the alleged flaws in training or supervision, that there was a pattern of prior similar incidents, or that the alleged flaws in training or supervision were so obvious that a single incident could state claim for relief).

of legal proceedings, abuse of authority, and discrimination…based on his protected status" (*id.* at ¶¶ 182-183), and "conspired to impede the due course of justice by obstructing the proper functioning of the legal system" through "manipulation of legal proceedings, abuse of authority, and interference with the fair adjudication" of his rights[,]" (*id.* at ¶¶ 215-217), fail because Mr. Greenberg has not plausibly alleged an underlying constitutional violation that is the object of any conspiracy. *Walters v. Pennsylvania State Police*, No. 13-2275, 2014 WL 3908150, at *13 (M.D. Pa. Aug. 11, 2014).[15]

Having dismissed all the federal claims, the Court declines to exercise supplemental jurisdiction over the remaining state-law claims. 28 U.S.C. § 1367(c)(3); *Elkadrawy v. Vanguard Grp., Inc.*, 584 F.3d 169, 174 (3d Cir. 2009).

---

[15] Additionally, Mr. Greenberg's Section 1985 conspiracy claims fail because none of the allegations suggest that Defendants' actions were motivated by class-based, invidiously discriminatory animus. *McGuire v. Borough of Wilkinsburg*, No. 13-1330, 2015 WL 1549256, at *7 (W.D. Pa. Apr. 7, 2015) (Bissoon, J.).

*    *    *

Therefore, after careful consideration, it is hereby **ORDERED** that Defendants' motions to dismiss (ECF 16; ECF 24; ECF 32; ECF 34) are **GRANTED**. Because Mr. Greenberg is proceeding *pro se*, the complaint is **DISMISSED WITHOUT PREJUDICE,** and Mr. Greenberg is granted leave to amend his complaint to address the deficiencies outlined above. Any such amended complaint must be filed by May 26, 2025. If no amended complaint is filed by that time, then the Court will convert the dismissal of the federal claims to a dismissal with prejudice.

Date: April 25, 2025                    BY THE COURT:

                                        /s/ J. Nicholas Ranjan
                                        United States District Judge

cc:
Jason Greenberg
2960 Sandy Lake Grove City Road
Stoneboro, PA 16153

- 18 -